**SO ORDERED.**

**SIGNED this 10 day of November, 2009.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE:

STEPHEN V. KOELZER, ) Case No. 08-10557
) Chapter 7
Debtor )

AGRICREDIT ACCEPTANCE LLC )

Plaintiff, )
v. ) Adv. No. 08-5128

STEPHEN V. KOELZER, )

Defendant. )

### MEMORANDUM OPINION

Agricredit Acceptance, L.L.C. (Agri) seeks to have its debt excepted from Stephen Koelzer's discharge under 11 U.S.C. § 523(a)(6), alleging that Koelzer's failure to account for certain balers

-1-

it sold him on credit amounts to the willful and malicious damage to property that § 523(a)(6) punishes.[1]  This case was tried on October 14, 2009, Agri appearing by counsel Eric D. Bruce and Mr. Koelzer appearing *pro se*.  Debtor and his son, Kevin Koelzer, testified.  Agri's Exhibits 1-5 and Debtor's Exhibit 1 were offered and admitted into evidence.  After trial, the Court carefully reviewed the testimony and exhibits admitted and makes the following findings of fact and conclusions of law.

Jurisdiction

This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and § 1334.

Facts

Debtor Stephen V. Koelzer filed his chapter 7 petition on March 20, 2008.  At that time, he lived in Stafford County, Kansas near his adult children, Kevin Koelzer and Vicky Bishop.  Previously, Koelzer farmed in eastern Washington state, both personally and as Koelzer Farms, L.L.C.  Both he and Koelzer Farms were debtors in cases in the Eastern District of Washington, but those cases were dismissed and certain of the assets repossessed or foreclosed upon by creditors.  After the cases were dismissed, Kevin operated the farms for a short period, but, eventually, the Koelzers wound up in Stafford where Vicky operates Midway Farms and Forage, Inc. ("MFF").  Kevin keeps its books and Stephen "helps out."  The relationship of MFF to the Koelzer operations, if any, is unclear, as is the timing of the Koelzers' move to Kansas, although it appears that they came here sometime in 2005.

---

[1] In its complaint, Agri alleged that Koelzer's debt to it should be excepted from his discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6).  At trial, Agri advised that it was no longer pursuing its false pretense claim under § 523(a)(2).

-2-

In May 2000, Koelzer purchased three Hesston Model 4790 balers on a Retail Installment Contract and Security Agreement (Contract) from Agri's predecessor for $129,235. He granted a security interest in the balers to Agri's predecessor, who assigned its interest to Agri on December 26, 2000. Koelzer made two payments of $31,000 each in 2001 and 2002, then defaulted. After that, the fate of the balers is unknown.

In denying Agri's motion for summary judgment, this Court established that one of the balers was repossessed, but the others were not accounted-for. Koelzer disclaims any specific knowledge of them, stating that he had a farm manager in Washington who took care of that end of the business. He has previously asserted that another secured creditor, Baker Boyer National Bank ("Baker"), repossessed the three balers after his company, Koelzer Farms, LLC filed bankruptcy.[2] He explained he had no record of what became of the balers because "no papers [were] ever left when people took equipment out of my yard."[3] When his property began to be repossessed, he attempted to resist, but was jailed in the state of Washington for breach of the peace. Thereafter, he sat in his house and watched repossessions go forward without interfering. Agri, however, presented the affidavit of a bank officer denying any knowledge of action against the equipment.

At trial, Koelzer maintained his ignorance regarding the whereabouts of the two missing balers. He testified he last saw the balers in 2004. He reiterated his theory that Baker repossessed the balers. He testified that he had heard a rumor that Baker salvaged the balers in 2004.

Agri suggested that Koelzer moved the balers to Stafford County, Kansas for MFF's use. Agri elicited testimony regarding Koelzer's arrest for trespass in Stafford County for attempting to

---

[2] Agri's Ex. 1, Transcript of Koelzer's Rule 2004 Examination at 10.

[3] *Id.* at 15.

remove property belonging to MFF off Burton Wetta's property as evidence that MFF had the balers. Both Stephen and Kevin denied that MFF had the balers, Kevin insisting instead that MFF has Hesston swathers. The closely-connected relationship among the Koelzers and Bishop and MFF excites some suspicion, particularly because MFF is in the feed and forage business and might have a use for balers. Unfortunately, Agri adduced no evidence that would support a conclusion that MFF has or had the balers.[4] The Court simply cannot determine what happened to the balers on this scanty record.

Analysis

11 U.S.C. § 523(a)(6) excepts debts for the willful and malicious damage to a creditor's property from a debtor's discharge. To prevail here, Agri needed to prove by a preponderance of the evidence that Koelzer's conduct harmed Agri's property interests and that he knew when committing that conduct of the harm he would cause.[5] Agri claimed that Koelzer had a duty to maintain the balers and be accountable for its whereabouts. The Contract provides that Koelzer "shall keep said property free of all liens, taxes, encumbrances and seizure or levy..."[6] Agri argued that Koelzer's checkered past with the courts and justice system, coupled with his incredible testimony that he has no knowledge regarding what happened to the balers, and the lack of documentary support for his theory that another secured creditor repossessed the balers, established

---

[4] In Koelzer's main bankruptcy case, there has been considerable litigation concerning MFF's property, its lease of ground owned by Burton & Wetta, and the Trustee's claim that some of that property was actually Koelzer's. At trial, Agri suggested that the Koelzer's trustee in bankruptcy had inventoried the equipment on MFF's site. The trustee's inventory was not introduced into evidence here.

[5] *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1988) (requiring a deliberate or intentional injury to a creditor or creditor's property).

[6] Agri's Ex. 2, Retail Installment Contract and Security Agreement at 2.

-4-

Koelzer intended to harm its interests in the missing balers.

Although Koelzer's professed lack of knowledge may be less than credible, there simply is no evidence pointing to Koelzer's malicious intent toward Agri. There is no evidence that Koelzer concealed or removed the balers. There is also no evidence of Koelzer considering the lien or its terms at the time the balers were removed from his property. The evidence is that once Koelzer got arrested during a repossession, he stopped interfering, sat back, and watched his Washington creditors remove his property, possibly including the balers. Those facts alone do not support a finding that Koelzer intended to damage the property interest of Agri or that he knew his inaction would result in such damage, particularly where he had previously been ordered to allow these actions to go forward. The only evidence of Koelzer's intent was his desire to avoid incarceration for interfering with the repossession process.

Koelzer denies knowledge of the balers' whereabouts. Agri's evidence demonstrates a series of circumstances that make the Court wary, but do not persuade it that Koelzer has somehow kept these balers from Agri. While the Court found Koelzer to be evasive, Kevin Koelzer was believable and the Court credits his evidence that MFF has no balers. Given the very sparse evidence presented by Agri, the Court cannot conclude that Koelzer had any knowledge of the balers' whereabouts or that he was actively concealing them. Judgment must therefore be entered for Koelzer and against Agri.

Conclusion

Agri failed to satisfy its burden of proving that Koelzer's failure to account for the whereabout of the two balers was willful and malicious within the meaning of § 523(a)(6). On the current record, the Court cannot find that Koelzer harbored the requisite intent to willfully and

maliciously damage Agri's interest in the balers. Accordingly, judgment should be entered in the complaint for Koelzer, costs assessed to Agri. A Judgment on Decision will issue today.

# # #